IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Apolinar Ambrocio, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **COMPLAINT** |
| vs. ) | |
| ) | |
| Richland County; Crayman Harvey, in his ) | C/A No:   2:24-cv-00568-RMG-MGB |
| individual and official capacities; and John ) | |
| Doe Detention Officer, in his individual ) | |
| capacity, ) | |
| ) | |
| Defendants ) | |
| ) | |

Plaintiff Apolinar Ambrocio, by and through his undersigned counsel of record, brings this civil rights action pursuant to 42 U.S.C. § 1983 against Richland County, and Crayman Harvey and John Doe Detention Officer (collectively hereinafter "the Individual Defendants"), as well as a Tort Claims Act action pursuant to S.C. Code Ann. § 15-78-10, *et seq.*, for gross negligence against Richland County.

**PARTIES**

1. Plaintiff Apolinar Ambrocio (hereinafter "Plaintiff") is a resident of Richland County.

2. Richland County (hereinafter "Defendant Richland County" or "Richland County") is a county in South Carolina which owns and operates the Alvin S. Glenn Detention Center ("ASGDC").

3. Upon information and belief, Defendant Crayman Harvey (hereinafter "Defendant Harvey") is a citizen of South Carolina and resides in Richland County, South Carolina, and was the Director or Interim Director of the ASGDC in Richland County and was acting under color of

state law at all times relevant to this Complaint. He is being sued in both his individual and official capacities.

4. Upon information and belief, Defendant John Doe Detention Officer (hereinafter "Defendant Doe") is a citizen of South Carolina and resides in Richland County, South Carolina, and was employed as a detention officer at the ASGDC and was acting under color of state law at all times relevant to this complaint. He is being sued in his individual capacity.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over the federal claims against Defendants pursuant to 28 U.S.C. § 1331 because those claims arise under federal law, 42 U.S.C. § 1983.

6. This Court has supplemental jurisdiction over the state claims against Defendants pursuant to 28 U.S.C. § 1367 because those claims arise under the same facts as those over which the Court has original jurisdiction as described in the preceding paragraph.

7. The Court further has personal jurisdiction over all Defendants as they reside in this District and their acts and/or omissions complained of occurred within this District.

8. Venue is proper in the District of South Carolina, Columbia Division, pursuant to 28 U.S.C. § 1391(b)(1) & (2), as the Defendants reside in this District and the acts or omissions complained of occurred within this District.

9. Plaintiff is currently in custody but has no meaningful opportunity to seek administrative remedies. Upon information and belief, the ASGDC is supposed to provide detainees with two options for filing grievances: (1) paper grievance forms provided to detainees upon request, and (2) kiosks that allow detainees to complete and file electronic grievance forms.

However, upon information and belief, the ASGDC has removed the grievance kiosks and no longer makes paper grievance forms available.

## FACTUAL ALLEGATIONS

10. On May 15, 2023, Plaintiff was arrested and booked into Alvin S. Glenn Detention Center on two charges.

11. Richland County routinely short staffed the ASGDC of detention center officers and personnel with such severity that it adversely affected servicing the detainee population throughout the jail.

12. Richland County continues to understaff the jail notwithstanding its knowledge that detainees are assaulting other detainees on a regular basis. These assaults include stabbings like the one suffered by Plaintiff.

13. Upon information and belief, Defendant Richland County and the Individual Defendants had knowledge of stabbings occurring in the ASGDC perpetrated by detainees with contraband weapons.

14. However, upon information and belief, Defendants routinely failed to search detainees for contraband weapons, which Defendants had reason to believe were frequently smuggled into the facility by employees or fashioned within the ASGDC by detainees.

15. On or about September 13, 2023, Plaintiff was being housed in F "Foxtrot" Dorm.

16. Around 9:00 p.m. that evening, Plaintiff was lying down in his bay in F Dorm when another detainee came in to attack him and steal his food.

17. The detainee initially stabbed Plaintiff in the chest and Plaintiff held his hands up to defend himself.

18. At this point, Plaintiff's roommate attempted to intervene, but fled the area when the detainee assaulting Plaintiff presented a weapon.

19. The detainee then told Plaintiff, "I'm going to kill you" and proceeded to stab Plaintiff in the face and in his hands, which Plaintiff was holding up to defend himself.

20. The detainee also grabbed Plaintiff and violently and repeatedly slammed Plaintiff's head into the concrete cell wall.

21. Upon information and belief, the detainee who attacked Plaintiff had consumed drugs prior to the assault, which may have included "spice."

22. Upon information and belief, detainees in the ASGDC regularly smoke "spice."

23. Upon information and belief, the detainee assaulting Plaintiff did not let up at any time during the assault and may have killed Plaintiff had no one intervened.

24. Plaintiff and his assailant were only separated when two other detainees intervened upon seeing that Plaintiff was bleeding and severely wounded.

25. The assailant did not steal any food from Plaintiff at that time but told Plaintiff that he would kill him if Plaintiff did not pay him money.

26. Fearing for his life and safety, Plaintiff then directed a family member to send the assailant $400 via CashApp pursuant to his demand and threats.

27. Upon information and belief, after Plaintiff paid his assailant, the assailant and a group of detainees used the money to buy $400 worth of drugs and snacks.

28. While Plaintiff lay bleeding out from his assault, his assailant and a group of detainees sat near Plaintiff eating the snacks they bought with his money and mocking him.

29. Upon information and belief, no detention officers were present during this period.

30. Upon information and belief, F Dorm is consistently without a supervising detention officer for twenty-two (22) hours a day.

31. As Plaintiff lay in F Dorm bleeding out, a group of other detainees came to his aid and helped wrap his wounds.

32. After approximately three (3) hours, a lieutenant came to F Dorm and saw Plaintiff's injuries.

33. This lieutenant took Plaintiff to the infirmary where it was determined that Plaintiff needed to be transported to the hospital.

34. Detention staff transported Plaintiff to the hospital where Plaintiff's wounds were stitched, and he was given an X-ray and a Tetanus shot.

35. Plaintiff speaks Spanish and understands very little English.

36. Plaintiff does not speak English.

37. While at the hospital, Plaintiff was interviewed by an English-speaking investigator with the Richland County Sheriff's Department during which time Plaintiff attempted to provide details of the assault.

38. When Plaintiff returned to ASGDC, detention staff photographed Plaintiff's injuries and attempted to interview Plaintiff further, but none of the detention staff conducting the interview spoke Spanish.

39. During the interview, detention staff asked Plaintiff to identify his assailant in a photographic line up.

40. Plaintiff identified his assailant and responded in the affirmative when detention staff asked if Plaintiff wished to pursue charges against his assailant.

41. Plaintiff never heard back from anyone at Richland County Sheriff's Department or ASGDC regarding the investigation into Plaintiff's assault.

42. Upon returning to ASGDC after his hospitalization, Plaintiff was initially housed in the infirmary before being moved to lockup where he occupied a single-person cell with another detainee for four days.

43. While in lockup, Plaintiff was forced to sleep on a concrete floor in a flooded cell where the toilets were in disrepair.

44. Due to the unsanitary conditions in the cell, including the broken toilet and filthy standing water on the floor where Plaintiff was forced to sleep, and because Plaintiff's complaints to detention staff about the conditions went unaddressed, Plaintiff reached out to his criminal defense attorney in a desperate attempt to be moved to another dormitory.

45. Plaintiff was later moved to E "Echo" Dorm.

**FOR A FIRST CAUSE OF ACTION**
**(Unconstitutional Conditions of Confinement**
**in Violation of the Fourteenth Amendment)**
**(*against Defendant Doe*)**

46. Plaintiff repeats and realleges the factual allegations contained in Paragraphs 1-38 as if fully restated herein.

47. Defendant Doe has an affirmative duty to provide for the basic needs of persons, including safety and treatment for serious medical needs to individuals in his custody and care, including Plaintiff.

48. Defendant Doe had knowledge of a significant number of stabbings at ASGDC and still failed to make efforts to ensure Plaintiff's safety.

49. Even with this knowledge, Defendant Doe did not search detainees prior to releasing them from their cells, failed to intervene in Plaintiff's assault after Plaintiff's assailant

flashed a weapon, and further failed to obtain backup or assistance after fleeing F Dorm, instead leaving Plaintiff at the mercy of his assailant.

50. Defendant Doe had knowledge of the significant risks associated with leaving a detainee who is being stabbed without any aid or ability to end the assault, but still failed to take efforts to ensure Plaintiff's safety.

51. Plaintiff was lying in his pod when he was attacked and stabbed by a detainee armed with an illegal weapon. Plaintiff relied on Defendant Doe to intervene in the assault, but Defendant Doe fled F Dorm upon realizing that Plaintiff's assailant was armed.

52. Following the attack, and despite Defendant Doe's knowledge of the stabbing, Plaintiff did not receive any assistance for three (3) hours before detention officers finally found him and transported him to the medical unit.

53. The conduct and actions of Defendant Doe, in failing screen detainees for weapons, failing to reasonably protect Plaintiff from attack, failing to obtain aid for Plaintiff despite knowledge that he was being stabbed, and failing to provide him with timely treatment for his wounds were unreasonable, were done intentionally, willfully, maliciously, and with deliberate indifference and/or reckless disregard for Plaintiff's basic human needs, and caused needless injury and suffering.

54. Defendant Doe's conduct was objectively and subjectively unreasonable.

55. Defendant Doe's deliberate indifference was the cause in fact and proximate cause of Plaintiff's injuries.

56. These failures constitute violations of Plaintiff's substantive due process rights guaranteed under 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.

57. Defendant Doe is liable to Plaintiff for his injuries, pain, and suffering.

**FOR A SECOND CAUSE OF ACTION**
**(Unconstitutional Conditions of Confinement**
**in Violation of the Fourteenth Amendment and**
**Monell v. Department of Social Services of City of New York)**
**(*against Defendant Richland County and Defendant Harvey*)**

58. Plaintiff repeats and realleges the factual allegations contained in Paragraphs 1-38 as if fully restated herein.

59. Defendant Richland County and Defendant Harvey had an affirmative duty to provide basic needs including safety and access to medical care to individuals in its custody and care, including Plaintiff.

60. Plaintiff and Defendants were aware of numerous other stabbings at ASGDC before Plaintiff's stabbing.

61. Notwithstanding their knowledge of these numerous and frequent stabbings, Defendants still chose to understaff the Detention Center and allow units to be left unsupervised.

62. The facts as stated above, as well as numerous other similar incidents, demonstrate a pattern and practice by the Defendants of understaffing the ASGDC such that detainees are routinely unsupervised, exposed to harm from violent detainees, and routinely attacked without intervention from detention center staff.

63. At the time of his attack, Plaintiff was lying down in his bay when he was stabbed by a detainee wielding an illegal weapon. Defendant Doe initially attempted to intervene, but fled when confronted with a weapon and thereafter did not obtain assistance for Plaintiff despite knowledge that he was being assaulted, practices which, upon information and belief, are commonplace due to chronic overcrowding and understaffing at the ASGDC.

64. Additionally, Plaintiff's assailant was able to extort money from Plaintiff because Defendant Doe left F Dorm unsupervised, a practice which, upon information and belief, is commonplace due to chronic overcrowding and understaffing at the ASGDC.

65. Notwithstanding Defendants' knowledge that detainees could pose a threat to other detainees, Defendants left detainees unsupervised and allowed detainees to extort other detainees, such as Plaintiff, without intervention.

66. Further, upon information and belief, Defendants failed to appropriately staff the ASGDC or to properly supervise said staff to prevent detainees from being attacked, to maintain staffing which would enable detention staff to adequately intervene when the Plaintiff was repeatedly stabbed by a fellow detainee, and to maintain staffing which would enable Defendant Doe to obtain backup from additional detention officers to assist Plaintiff during his attack.

67. Upon information and belief, Defendant Richland County and Defendant Harvey engaged in a pattern and practice of failing to perform appropriate inspections of detainees, detainee cells, and common areas to discover contraband weapons, despite Defendants' explicit knowledge that detainees possess weapons that are used to perpetrate significant harm upon detainees such as Plaintiff.

68. The conduct and actions of Defendants, acting under color of state law, in failing to adequately supervise large groups of detainees, failing to prevent Plaintiff from being assaulted, failing to intervene as Plaintiff was stabbed repeatedly, failing to obtain assistance for Plaintiff despite knowledge that he was being violently attacked, and failing to provide Plaintiff with timely health care for serious medical needs were unreasonable, were done intentionally, willfully, maliciously, and with deliberate indifference and/or reckless disregard for Plaintiff's basic human needs and serious medical needs, and caused injury and suffering.

69. Defendant Richland County and Defendant Harvey's conduct was objectively and subjectively unreasonable.

70. Defendant Richland County and Defendant Harvey's pattern and practice constituted deliberate indifference and was the cause in fact and proximate cause of Plaintiff's injuries.

71. These failures constitute violations of Plaintiff's substantive due process rights guaranteed under 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.

72. Defendant Richland County and Defendant Harvey are liable to Plaintiff based upon these improper practices.

**FOR A THIRD CAUSE OF ACTION**
**(Deliberate Indifference to Serious Medical Needs**
**in Violation of the Fourteenth Amendment)**
**(*against Defendant Doe*)**

73. Plaintiff repeats and realleges the factual allegations contained in Paragraphs 1-38 as if fully restated herein.

74. Defendant Doe had an affirmative duty to provide Plaintiff with adequate medical care for serious medical needs during his confinement.

75. The facts as stated in the above-referenced paragraphs demonstrate a deliberate indifference to Plaintiff's serious medical needs in violation of the Fourteenth Amendment.

76. The conduct and actions of Defendant Doe, acting under color of state law, in failing to provide Plaintiff access to adequate medical care for serious medical needs were unreasonable, were done intentionally, willfully, maliciously, and with deliberate indifference and/or reckless disregard for Plaintiff's basic human needs, and caused needless injury and suffering.

77. Defendant Doe's conduct was objectively and subjectively unreasonable.

78. Defendant Doe's deliberate indifference was the cause in fact and proximate cause of Plaintiff's injuries.

79. Defendant Doe's deliberate indifference to Plaintiff's serious medical needs constitutes a violation of Plaintiff's substantive due process rights guaranteed under 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.

80. Defendant Doe is liable to Plaintiff for this deprivation of rights.

**FOR A FOURTH CAUSE OF ACTION**
**(Deliberate Indifference to Serious Medical Needs**
**in Violation of the Fourteenth Amendment and**
**Monell v. Department of Social Services of City of New York)**
**(*against Defendant Richland County and Defendant Harvey*)**

81. Plaintiff repeats and realleges the factual allegations contained in Paragraphs 1-38 as if fully restated herein.

82. Defendant Richland County and Defendant Harvey had an affirmative duty to provide Plaintiff with adequate medical care for his serious medical needs during his confinement.

83. Upon information and belief, numerous other detainees at the ASGDC have experienced a failure by Defendant Richland County and Defendant Harvey to adequately provide for medical care in deliberate indifference to other individuals' serious medical needs. In failing to staff the Detention Center, Defendants engaged in a pattern and practice of failing to provide appropriate medical care for serious medical needs.

84. The facts of this case, and other known incidents, demonstrate a deliberate indifference to Plaintiff's serious medical needs in violation of the Fourteenth Amendment.

85. The facts as stated in the above-referenced paragraphs demonstrate a pattern and practice by Defendant Richland County and Defendant Harvey of understaffing the ASGDC such

11

that detainees such as Plaintiff are routinely prevented from being examined by medical staff and from being sent for outside medical care when necessary for serious medical needs.

86. The conduct and actions of Defendants, acting under color of state law, in failing to provide Plaintiff access to adequate medical care constitutes deliberate indifference and/or reckless disregard for Plaintiff's serious medical needs, and caused needless suffering and further injury.

87. Defendant Richland County and Defendant Harvey's conduct was objectively and subjectively unreasonable.

88. Defendant Richland County and Defendant Harvey's deliberate indifference was the cause in fact and proximate cause of Plaintiff's injuries.

89. This failure to provide Plaintiff access to adequate medical care constitutes a violation of Plaintiff's substantive due process rights guaranteed under 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.

90. Defendant Richland County and Defendant Harvey are liable to Plaintiff for this deprivation of his Constitutional rights.

**FOR A FIFTH CAUSE OF ACTION**
**(Gross Negligence)**
*(against Defendant Richland County)*

91. Plaintiff repeats and realleges the factual allegations contained in Paragraphs 1-38 as if fully restated herein.

92. This is an action for gross negligence brought against Defendant Richland County under the laws of the State of South Carolina.

93. This cause of action is brought pursuant to the South Carolina Tort Claims Act, S.C. Code §§15-78-10, *et seq*.

94. At all times relevant to this complaint, the Individual Defendants and other detention staff at the ASGDC were employees and/or agents of Defendant Richland County, which funds the ASGDC and manages it pursuant to authority vested in it by the Richland County Sheriff[1], and were acting within the course and scope of their employment, in furtherance of the interests of Defendant Richland County, and with Richland County's knowledge and consent.

95. Defendant Richland County is liable for the actions and omissions of its employees and/or agents that gave rise to this action including the actions and omissions of the Individual Defendants.

96. Defendant Richland County by and through its employees and agents, owed a duty to Plaintiff, including the special duty to him while in their custody to act in a prudent and reasonable manner with regard to his health and safety in the following particulars, to wit:

   a. to properly staff its facility;

   b. to ensure staff supervision of detainees;

   c. to confine detainees in accordance with guidelines to ensure their safety and security;

   d. to prevent attacks by other detainees;

   e. to enforce its own policies with respect to the possession of contraband and the search for and removal thereof;

   f. to intervene during attacks on their premises;

   g. to obtain adequate assistance for detainees being attacked; and

   h. to promptly provided adequate medical care for serious medical needs.

---

[1] S.C. Code Ann. § 24-5-10, *et seq.*

97. Defendant Richland County also owed ministerial duties in the following particulars, to wit:

   a. to provide responsible and effective operations of the ASGDC;

   b. to establish proper policies, customs, and regulations of the ASGDC;

   c. to supervise its detention staff;

   d. to properly train and retrain said staff;

   e. to discipline said staff and only retain those persons fit for duty; and

   f. to properly correct and remediate any known deficiencies within its staff or within the ASGDC.

98. Upon information and belief, prior to the incident involving Plaintiff, Defendant Richland County had customs or policies of the following, which upon information and belief still exist at this time:

   a. understaffing the ASGDC;

   b. failing to screen detainees for contraband or jail-fashioned weapons;

   c. failing to adequately supervise detainees;

   d. leaving detainees who are attacked to fend for themselves;

   e. failing to obtain assistance for detainees who are attacked;

   f. failing to provide prompt and adequate medical care for serious medical needs; and

   g. failing to properly train, retrain, supervise, and discipline detention staff including the Individual Defendants.

99. The aforementioned failures amounted to violations of non-discretionary and non-delegable duties owed to detainees of ASGDC including Plaintiff.

100. As such, Defendant Richland County breached its duties including ministerial duties owed to Plaintiff.

101. Defendant Richland County's failure to reprimand and intervene and/or take corrective action against its corrections staff or within the ASGDC is evidence that Defendant Richland County ratified and promulgated staff misconduct and the conditions inside the ASGDC, and provides further evidence of its breach of duties owed to detainees housed at the ASGDC, including Plaintiff.

102. Upon information and belief, in the years prior to the incident involving Plaintiff, despite knowledge of weapons within the ASGDC and violence between detainees, Defendant Richland County never reviewed, or formally amended training and/or policies and/or disciplinary measures and/or supervision techniques to eradicate or even mitigate the threat posed by violent detainees.

103. Defendant Richland County's continued and repeated failures as described herein resulted in the Individual Defendants breaching the duty they owed by showing an absence of care and/or willfully, wantonly, and recklessly disregarding the life and bodily integrity of Plaintiff by failing to intervene when Plaintiff was attacked, leaving Plaintiff to fend for himself as he was repeatedly stabbed, failing to obtain adequate assistance for Plaintiff as he was repeatedly stabbed, and in failing to timely provide Plaintiff with adequate medical attention to treat his injuries.

104. Defendant Richland County knew or should have known of the dangers posed by its failures illustrated in this Complaint, and that said actions and inactions were reckless and or constituted the total absence of care likely to result in violations of a detainee's rights, and as such were reasonably foreseeable.

105. Defendant Richland County, by and through its duly authorized employees, owed a duty to Plaintiff to be reasonable in the management and conduct of the ASGDC.

106. Defendant Richland County, by and through the Individual Defendants, breached duties owed to Plaintiff by failing to search or screen Plaintiff's attackers and to ensure that they did not have access to contraband weapons, failing to intervene when Plaintiff was attacked and stabbed repeatedly, leaving Plaintiff to fend for himself as he was violently attacked, and failing to provide Plaintiff with prompt and adequate medical care for his serious medical needs.

107. Each act or omission detailed in this matter constitutes a separate occurrence.

108. Defendant Richland County's actions and omissions, by and through its authorized agents, were unreasonable, constituted the total absence of care, and breached duties owed to Plaintiff and actually and proximately contributed to and/or caused the severe injury sustained by Plaintiff.

109. Plaintiff is entitled to Judgment against Detention Richland County for damages as to be determined by the triers of fact in this case.

## **JURY DEMAND**

**WHEREFORE**, Plaintiff demands a trial by jury and respectfully requests that this Court award the following damages, jointly and severally against Defendants, as provided by South Carolina law and the United States Constitution, including but not limited to the following:

a. Compensatory, actual, and consequential damages to Plaintiff;

b. Costs of this action and attorney's fees to Plaintiff for the civil rights causes of action under 42 U.S.C. § 1988;

c. Loss of past and future support and services with interest;

d. Loss of earnings and/or earning capacity;

    e.   Punitive damages; and

    f.   Such other and further relief as this Court may deem appropriate.

Respectfully submitted, this 1st day of February 2024.

                                      **STROM LAW FIRM, LLC**

                                    *s/ Bakari T. Sellers*
Bakari T. Sellers (SC Fed. ID # 11099)
Mario A. Pacella (SC Fed. ID # 7538)
Amy E. Willbanks (SC Fed. ID # 13537)
Alexandra Benevento (SC Fed. ID # 10734)
Matthew B. Robins (SC Fed. ID # 13313)
6923 N. Trenholm Road, Suite 200
Columbia, South Carolina 29206
Phone: (803) 252-4800
Email: bsellers@stromlaw.com
       mpacella@stromlaw.com
       awillbanks@stromlaw.com
       abenevento@stromlaw.com
       mrobins@stromlaw.com

*Attorneys for Plaintiff*